UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

BRYAN BRATT,

Plaintiff,

v.

CARLSBAD POLICE DEPARTMENT, CARLSBAD COMMUNITY THEATRE, and DOES 1-100,

Defendants.

Case No.:  24-CV-1295 JLS (BLM)

**ORDER GRANTING IN PART AND DENYING IN PART AS MOOT DEFENDANT CITY OF CARLSBAD'S MOTION TO DISMISS AND DEFENDANT PATRONS OF THE ARTS FOUNDATION DBA CARLSBAD COMMUNITY THEATER'S MOTION TO DISMISS**

(ECF Nos. 20, 21)

Presently before the Court are Defendant City of Carlsbad's (the "City") Motion to Dismiss Plaintiff's Second Amended Complaint ("City Mot.," ECF No. 21) and Defendant Patrons of the Arts Foundation dba Carlsbad Community Theater's ("CCT") Motion to Dismiss Second Amended Complaint ("CCT Mot.," ECF No. 20).  Plaintiff Bryan Bratt ("Plaintiff") filed two oppositions, one to the City's Motion ("City Opp'n," ECF No. 23), and one to CCT's Motion ("CCT Opp'n," ECF No. 22).  Both City and CCT (collectively, "Defendants") filed replies.  *See* ECF No. 26 ("City Reply"); ECF No. 28 ("CCT Reply"). / / /

1

Having carefully considered Plaintiff's Second Amended Complaint ("SAC," ECF No. 19), the Parties' arguments, and the law, the Court now **GRANTS IN PART AND DENIES IN PART AS MOOT** the Motions.

## BACKGROUND

## I.      Procedural Background

Plaintiff, proceeding *pro se*, initially filed his Complaint in state court on June 17, 2024, naming Carlsbad Police Department ("Carlsbad PD"), CCT, and DOES 1–100 as Defendants.  *See* ECF No. 1-3 ("Compl.").  The City subsequently removed the case, asserting federal question jurisdiction based on Plaintiff's 42 U.S.C. § 1983 claim and supplemental jurisdiction as to his remaining causes of action.[1]  ECF No. 1 ("Not. of Removal") at 1–2.  Plaintiff's Complaint alleged that he "planned a peaceful protest" after CCT made a decision that "unfairly cast [Plaintiff] in a negative light."  Compl. ¶ 2.  On June 24—just days before the scheduled protest— Carlsbad PD allegedly sent Plaintiff a "cease and desist directive."  *Id.* ¶ 17.  The directive purportedly ordered Plaintiff not to go through with the protest and threatened him with legal consequences.  *Id.*  When Plaintiff asked Carlsbad PD about the directive, "the department informed him that they had no record of the incident."  *Id.* ¶ 18.  Paradoxically, however, Carlsbad PD was able to "discuss the specifics of the situation when pressed."  *Id.*  Later, representatives from Carlsbad PD supposedly told Plaintiff that "they typically do not issue cease and desist orders."  *Id.* ¶ 21.  Plaintiff was never afforded a hearing to contest the basis of the directive.  *Id.* ¶ 20.  Plaintiff alleges the foregoing events led to his "social and professional ostracism," thereby harming him emotionally and economically.  *See id.* ¶ 22.

The City then filed a Motion to Dismiss, *see* ECF No. 2, which the Court granted on August 19, 2024, *see* ECF No. 6.  Specifically, the Court found that Plaintiff's state law claims were subject to dismissal, as Plaintiff failed to plead compliance with the presentment and timing requirements of the California Government Claims Act.  ECF

---

[1] Plaintiff erroneously sued Carlsbad PD and should have named the City.  City Mot. at 3.

24-CV-1295 JLS (BLM)

No. 6 at 4–6. Next, the Court found that Plaintiff's § 1983 claim was subject to dismissal, as it was untimely, and that Plaintiff failed to sufficiently plead municipal liability. *Id.* at 6–10. However, in light of Plaintiff's *pro se* status, the Court granted him an opportunity to amend his Complaint. *Id.* at 10–11.

CCT then filed a Motion to Dismiss Plaintiff's Complaint. ECF No. 7. Plaintiff filed his First Amended Complaint ("FAC," ECF No. 8) thereafter. Consequently, the Court denied CCT's Motion as moot in light of the newly amended complaint. *See* ECF No. 9. The City and CCT then each filed the Motions to Dismiss Plaintiff's FAC. *See* ECF Nos. 10, 11. On June 25, 2025, the Court granted in part and denied in part the Motions and dismissed Plaintiff's FAC with leave to amend. *See* ECF No. 18 ("Order"). The Court again found that Plaintiff insufficiently pled municipal liability against the City, Title VII violations against CCT, and retaliation against all Defendants. Order at 7–11. The Court declined to exercise supplemental jurisdiction over Plaintiff's remaining state law claims—thus denying as moot Defendants' Motions in this regard. *Id.* at 12. The Court allowed Plaintiff leave to amend. *Id.* at 13.

On July 7, 2025, Plaintiff filed his SAC alleging eleven causes of action: (1) 42 U.S.C. § 1983 First and Fourteenth Amendments against City; (2) *Monell* Liability against City; (3) Retaliation against all Defendants; (4) Intentional Infliction of Emotional Distress ("IIED") against all Defendants; (5) Negligent Infliction of Emotional Distress ("NIED") against all Defendants; (6) Abuse of Process against all Defendants; (7) Discrimination in Violation of California Law against CCT; (8) Bane Act against all Defendants; (9) Gross Negligence against all Defendants; (10) *Monell* Failure to Train Liability against City; and (11) Breach of Implied Contract against CCT. *See generally* SAC. Defendants filed the current Motions in response. *See* City Mot.; *see also* CCT Mot.

**II.     Factual Allegations in the SAC**

Plaintiff's SAC alleges that on or about June 2019, he "engaged in constitutionally protected advocacy related to perceived discriminatory practices by [CCT]." SAC ¶ 16. He purportedly planned "to peacefully protest decisions by CCT that he believed unjustly

excluded or vilified him." *Id.* Then, on or about July 30, 2019, Plaintiff received a phone call "from an individual identifying themselves as a representative of" Carlsbad PD, informing him that he must "cease and desist from proceeding with the planned protest and was warned that he would face legal consequences if he did not comply." *Id.* ¶ 17. This, and alleged harassment from "theatre representatives," caused him to cancel the planned protest, *id.* ¶ 18, yet when he later contacted Carlsbad PD and inquired about the "cease and desist directive" ("Directive"), he was informed "the department had no record of such an order" and "that cease and desist directives were not standard practice," *id.* ¶ 19. Despite such representation, Carlsbad PD officials, "when pressed further, . . . acknowledged the incident and discussed specific details." *Id.* ¶ 19. Plaintiff alleges the foregoing events led to his ostracization within his professional and social communities, resulting in a loss of employment at both Uber and SeaWorld, "due to stigmatization associated with the ongoing perception that he was under police scrutiny or subject to legal restraint or of poor moral character that was a result of unclear circumstances." *Id.* ¶ 23.

Plaintiff alleges he "has experienced a pattern of retaliation and social exclusion resulting from the directive and Defendants' sustained informal enforcement"—including "repeated indirect communications through CCT affiliates, warnings to avoid certain events, and Plaintiff being asked to leave or denied access to public or community spaces." *Id.* ¶ 20. Plaintiff alleges that in December 2023, Plaintiff was "again blocked from attending or participating in theater activities" due to "the same continuing defamatory and coercive narrative originating from the 2019 incident." *Id.* ¶ 24. And in May 2025, he "uncovered evidence that the original cease and desist directive was likely never formally authorized or recorded and may have been issued fraudulently." *Id.* ¶ 25. Plaintiff found that "no documentation existed and that the City of Carlsbad had not acknowledged or reviewed the incident," *id.*, and that "Carlsbad PD failed to notify city authorities of the issuance of the directive" leading to "nearly five years" of "reputation-based exclusion, and community-wide stigmatization," *id.* ¶ 26.

/ / /

24-CV-1295 JLS (BLM)

Plaintiff alleges that his "permanent state of reputational suspicion" has caused him fear and helplessness as well as hindering his ability to network and participate in the performing arts industry. *Id.* ¶¶ 27–29. Finally, Plaintiff alleges that on or about August 28, 2024, he submitted formal notice of a claim to the City of Carlsbad. *Id.* ¶ 31. Plaintiff seeks compensatory damages, punitive damages, declaratory judgments that his constitutional rights were violated, an injunction prohibiting Defendants from further violations of the law, and attorneys' fees. *Id.* at 30–33.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted." To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id*. (quoting *Twombly*, 550 U.S. at 557).

Though this plausibility standard "does not require 'detailed factual allegations,' . . . it [does] demand[] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). In other words, a complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (alteration in original) (quoting *Twombly*, 550 U.S. at 557). Put differently, "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

Review under Rule 12(b)(6) requires a context-specific analysis involving the Court's "judicial experience and common sense." *Iqbal*, 556 U.S. at 679. In performing that analysis, "a district court must accept as true all facts alleged in the complaint, and

24-CV-1295 JLS (BLM)

draw all reasonable inferences in favor of the plaintiff." *Wi-LAN Inc. v. LG Elecs., Inc.*, 382 F. Supp. 3d 1012, 1020 (S.D. Cal. 2019). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (second alternation in original). If a complaint does not survive Rule 12(b)(6), a court grants leave to amend unless it determines that no modified contention "consistent with the challenged pleading could . . . possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

## ANALYSIS

Plaintiff's SAC appears to allege four federal claims against the City, and one against CCT. As to the City, Plaintiff's SAC alleges a § 1983 claim in his First Cause of Action, a *Monell* claim in his Second Cause of Action, a § 1983 First Amendment retaliation claim in his Third Cause of Action, and a failure to train claim in his Tenth Cause of Action.[2] As for CCT, Plaintiff alleges federal retaliation in his Third Cause of Action. Plaintiff's remaining claims assert violations of state law. The Court first addresses whether Plaintiff has stated a federal claim against either the City or CCT.

### I. The SAC's Federal Claims

#### A. First, Second, and Tenth Causes of Action

Plaintiff first alleges § 1983 claims on the basis that Carlsbad PD violated his First Amendment right to free speech by issuing the Directive, and his Fourteenth Amendment right to due process by failing to provide him an opportunity to contest the Directive. SAC ¶¶ 34–42. Plaintiff also alleges a *Monell* claim under a custom or policy theory and under a failure to train theory. *Id.* ¶¶ 45–50; 107–114. As before, the City argues Plaintiff fails to state a § 1983 claim under *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 US 658, 690 (1978). *See* City Mot. at 6–8. The Court agrees.

---

[2] The Court notes that Causes of Action Two and Ten are nearly identical and both allege a failure to train, supervise, or discipline under *Monell*. *See generally* SAC.

24-CV-1295 JLS (BLM)

Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Conner*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). To state a claim under § 1983, a plaintiff must allege both that (1) the defendant was acting under color of state law at the time the complained of act was committed, and (2) the defendant's conduct deprived the plaintiff of a right secured by the Constitution and laws of the United States. *Tsao v. Desert Palace*, 698 F.3d 1128, 1138 (9th Cir. 2012) (citing *Chudacoff v. Univ. Med. Ctr. of S. Nev.*, 649 F.3d 1143, 1149 (9th Cir. 2011)).

A municipal entity may not be liable under § 1983 unless it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or has a "governmental 'custom' even though such a custom has not received formal approval through the body's official [decision-making] channels" that causes a constitutional harm. *Monell*, 436 U.S. at 690–91. To state a *Monell* claim, a plaintiff must allege: (1) the plaintiff was deprived of a federal constitutional right; (2) the local government entity had a policy; (3) the policy amounted to a deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *See Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). "Municipalities may be liable under § 1983 for constitutional injuries pursuant to (1) an official policy; (2) a pervasive practice or custom; (3) a failure to train, supervise, or discipline; or (4) a decision or act by a final policymaker." *Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 602–03 (9th Cir. 2019) (citing *Monell*, 435 U.S. at 693–95).

To "withstand a motion to dismiss for failure to state a claim, a *Monell* claim must consist of more than mere 'formulaic recitations of the existence of unlawful policies, conducts[,] or habits.'" *Bedford v. City of Hayward*, No. 3:12-cv-00294-JCS, 2012 WL 4901434, at *12 (N.D. Cal. Oct. 15, 2012) (citation omitted). "*Monell* allegations must be [pled] with specificity. . . ." *Galindo v. City of San Mateo*, No. 16-cv-03651-EMC, 2016 WL 7116927, at *5 (N.D. Cal. Dec. 7, 2016).

/ / /

24-CV-1295 JLS (BLM)

*1. Custom, Practice, or Policy*

Plaintiff first attempts to establish the City's liability based on a custom, practice, or policy. SAC ¶ 45. In his First Cause of Action, Plaintiff alleges that the City has a policy of permitting its officers to issue informal cease and desist directives, failing to document communications that restrict constitutionally protected activity, and continuing to informally enforce the directive even after denying its formal existence. *Id.*

Allegations of an unconstitutional policy or custom will be sufficient where they "(1) identify the challenged policy/custom; (2) explain how the policy/custom is deficient; (3) explain how the policy/custom caused the plaintiff harm; and (4) reflect how the policy/custom amounted to deliberate indifference." *Herd v. Cnty. of San Bernardino*, 311 F. Supp. 3d 1157, 1167 (C.D. Cal. 2018) (quoting *Young v. City of Visalia*, 687 F. Supp. 2d 1141, 1163 (E.D. Cal 2009)). This policy must be the proximate cause of the § 1983 injury. *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir. 1996) (citing *Mann v. City of Tucson, Dep't of Police*, 782 F.2d 790, 793 (9th Cir. 1986)).

Here, Plaintiff's SAC does not point to any specific policy or custom by the City that amounted to deliberate indifference of his constitutional rights and caused constitutional harm. Plaintiff did not allege any other instances of the asserted violations by the City—beyond the alleged violation experienced by Plaintiff himself. "The Ninth Circuit has consistently held that a single incident is not enough to establish a municipality has a policy or custom." *Rouchon v. Cnty. of Los Angeles*, No. 18-CV-10029-VAP-MAAx, 2019 WL 8755120, at *4 (C.D. Cal. Nov. 26, 2019) (citing *Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) ("A plaintiff cannot prove the existence of a *municipal* policy or custom based solely on the occurrence of a single incident of unconstitutional action by a [non-policymaking] employee.")). Plaintiff states himself in his SAC that "cease and desist directives were not standard practice" of Carlsbad PD and has presented no evidence that this conduct has occurred to anyone else. SAC ¶ 19. Therefore, Plaintiff has failed to plead a custom, policy, or practice of the City.

/ / /

24-CV-1295 JLS (BLM)

*2. Failure to Train*

Plaintiff also attempts to establish the City's liability based on a *Monell* failure to train or supervise claim. SAC ¶¶ 45–50; 107–114. Plaintiff's Second and Tenth Causes of Action both include these allegations. *Id.*

Plaintiff must sufficiently allege that City's failure to train amounted to "deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). A failure to train must reflect a "deliberate or conscious choice by a municipality." *Id.* at 389 (internal quotation marks omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks omitted) (quoting *Bd. of Cnty. Com'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). When city policymakers are "on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights," the city may be found deliberately indifferent if they chose to retain that program. *Id.* To demonstrate that failure to train amounts to deliberate indifference, it is "ordinarily necessary to demonstrate a pattern of similar constitutional violations by untrained employees." *Scalia v. Cnty. of Kern*, 308 F. Supp. 3d. 1064, 1078 (E.D. Cal. 2018) (internal quotation marks omitted) (quoting *Connick*, 563 U.S. at 62). Deliberate indifference may be shown through evidence of a "failure to investigate and discipline employees in the face of widespread constitutional violations." *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018) (citation omitted).

Plaintiff's failure to train allegations are conclusory and not sufficiently specific to support a *Monell* claim. Plaintiff alleges Carlsbad PD "inadequately train[ed] and supervis[ed] its employees," in "the constitutional limits of law enforcement activity with respect to citizen protests and free expression," issuing legal directives affecting First Amendment rights, treatment of people suspected of disruptive public conduct, and internal accountability and verification of "informal or undocumented orders such as 'cease and

desist directives.'" SAC ¶ 109. Plaintiff further alleges that this is not a one-time mistake "but the result of an ongoing pattern or custom of informally suppressing dissent, selectively enforcing police power, and failing to correct improper actions even after being notified." *Id.* ¶ 111. Plaintiff also states that this failure to provide training "constituted deliberate indifference to the rights of those with whom Carlsbad PD officers interact," were a proximate cause of his deprivation of constitutional rights, and caused him damages. *Id.* ¶ 112.

Again, the Court finds that these allegations are "formulaic recitations of the existence of unlawful policies, conducts[,] or habits," *Bedford*, 2012 WL 4901434, at *12 (citation omitted), and "of the elements of a cause of action," *Twombly*, 550 U.S. at 555, which are insufficient to state a *Monell* claim. Further, while Plaintiff did provide additional details regarding allegedly what training the officers lacked, Plaintiff again fails to allege any other instances of the failure to train beyond the facts at issue. *See Hyde v. City of Willcox*, 23 F.4th 863, 874 (9th Cir. 2022) ("While deliberate indifference can be inferred from a single incident when the unconstitutional consequences of failing to train are patently obvious . . . an inadequate training policy itself cannot be inferred from a single incident." (internal citations omitted)); *Hendrix v. City of San Diego*, 20-CV-45 TWR (NLS), 2021 WL 3892671, at *8 (S.D. Cal. Aug. 11, 2021) (dismissing a failure to train claim because plaintiff did not allege similar constitutional violations to the one at issue).

Accordingly, the Court agrees with the City that Plaintiff has failed to state a § 1983 claim under *Monell*, including under a failure to train theory. Accordingly, the Court **GRANTS** the City's Motion to Dismiss Plaintiff's First, Second, and Tenth Causes of Action.

### B.   *Third Cause of Action—42 U.S.C. 1983 Retaliation*

Plaintiff then alleges a § 1983 First Amendment Retaliation claim against all Defendants. SAC ¶¶ 51–58.

In his Third cause of action, while unclear, it seems that Plaintiff alleges that the City retaliated against Plaintiff by issuing a "fraudulent cease and desist directive" in

24-CV-1295 JLS (BLM)

response to his organizing and preparation to protest. *Id.* ¶¶ 53–54. As discussed above, a municipal entity may not be liable under § 1983 unless it "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or has a "governmental 'custom' even though such a custom has not received formal approval through the body's official [decision-making] channels" that causes a constitutional harm. *Monell*, 436 U.S. at 690–91. Plaintiff does not allege any policy or custom of the City or that this alleged conduct has occurred more than just in this case. Therefore, City's Motion to Dismiss the Third Cause of Action is **GRANTED**.

As to CCT, Plaintiff alleges that CCT "support[ed] a fraudulent cease and desist directive," intimidated his romantic partner into severing ties with him, blacklisted him from venues and productions, and enabled ongoing ostracism and reputational damage because "they were motivated at least in substantial part, by Plaintiff's protected speech and protest planning." SAC ¶¶ 54–55. CCT argues that they cannot be liable under a § 1983 claim because Plaintiff has failed to allege facts demonstrating CCT, "a private non-governmental entity," acted under color of state law. CCT Mot. at 6.

A defendant may act under color of state law where her conduct "satisfies the state-action requirement of the Fourteenth Amendment," i.e., "the defendant's alleged infringement of the plaintiff's federal rights is 'fairly attributable to the State.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)). In determining this, (a) "the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible," and (b) "the party charged with the deprivation must be a person who may fairly be said to be a state actor," either because she is a state official, because she has acted together with or has obtained significant aid from state officials, or because her conduct is otherwise chargeable to the state. *Lugar*, 457 U.S. at 937.

Plaintiff does not allege that CCT relates to the City or State in any way. Plaintiff merely alleges that CCT "support[ed]" the fraudulent issuance of the Directive—but does

24-CV-1295 JLS (BLM)

not allege that CCT was involved at all with the Directive or how they allegedly "support[ed]" the City.  SAC ¶ 54.  There are no allegations that CCT's decision to exclude Plaintiff from theater events and otherwise engage in reputational-harming activities is "fairly attributable to the State."  *Barrios v. Antelope Valley Chevrolet Inc.*, No. 23-CV-10476-AB-JC, 2024 WL 4404494, at *3 (C.D. Cal. Aug. 1, 2024) (finding no state action of a private party where the only allegations are that the private company complained to the police).  Further, Plaintiff fails to address any arguments regarding State Action in his Opposition.[3]  *See generally* CCT Opp'n.

Therefore, CCT's Motion to Dismiss as to the Third Cause of Action is **GRANTED**.

### C.    Conclusion

The Court finds Plaintiff's SAC fails to plead sufficient allegations to state a federal claim against either the City or CCT.  In light of this finding, the Court declines to reach the City and CCT's arguments that Plaintiff's claims are barred by the applicable statutes of limitations.  The City and CCT's Motions to Dismiss are thus **GRANTED**, and the Court **DISMISSES** Plaintiff's First, Second, Third, and Tenth Causes of Action.

## II.    The FAC's State Law Claims

The Court next addresses Plaintiff's remaining state law claims.  "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotation marks and citation omitted).  As such, federal courts have jurisdiction over civil actions in which (1) a federal question exists, or (2) complete diversity of citizenship between the parties exists and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331, 1332.

/ / /

---

[3] Plaintiff's Opposition to CCT's Motion incorrectly numbers the causes of action, addresses causes of action not pled, confuses which causes of action were against which Defendant, and fails to address CCT's State Action argument.  *See* CCT Opp'n.  The Court may treat arguments raised in a motion to dismiss that are not addressed in the opposition as admitted.  *See Kelly v. Cnty. of Orange*, No. 24-CV-933-JVS-JDE, 2024 WL 5185339, at *7 n.3 (C.D. Cal. Nov. 25, 2024).

24-CV-1295 JLS (BLM)

As this case was removed based on federal question jurisdiction, *see* Not. of Removal, the now-dismissed federal law claims provide the sole bases for federal subject matter jurisdiction in this case.    While a federal court may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3). *See also Albingia Versicherungs A.G. v. Schenker Int'l, Inc.*, 344 F.3d 931, 937–38 (9th Cir. 2003) (Section 1367(c) grants federal courts the discretion to dismiss state law claims when all federal claims have been dismissed).    A court, in considering whether to retain supplemental jurisdiction, should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (internal quotation marks omitted).    However, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Exec. Software N. Am., Inc. v. U.S. Dist. Court*, 24 F.3d 1545, 1553 n.4 (9th Cir. 1994) (emphasis omitted), *overruled on other grounds by*, *Cal. Dep't of Water Res. v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

Here, the balance of factors weighs in favor of dismissing Plaintiff's remaining state law claims.    This case has yet to proceed beyond the pleadings, and thus few judicial resources are wasted by dismissing the case at this stage.    Further, dismissal promotes comity by allowing the California courts to interpret state law concerning the state law claims in the first instance.    Thus, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *See Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (courts may decline to exercise supplemental jurisdiction over related state law claims under subsection (c)(3) once it has dismissed all claims over which it has original jurisdiction).

/ / /

24-CV-1295 JLS (BLM)

Accordingly, because the Court declines to exercise supplemental jurisdiction as to Plaintiff's state law claims, Plaintiff's state law claims against the City and CCT are **DISMISSED**. Consequently, the Court **DENIES** the City and CCT's respective Motions to Dismiss as to Plaintiff's state law claims as **MOOT**.

## III.    Leave to Amend

The final consideration is whether Plaintiff should again be granted leave to amend. Leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). But while the rule should be interpreted liberally, leave should not be granted automatically. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1387 (9th Cir. 1990). In determining whether to grant leave to amend, trial courts should consider various factors, including bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the party has previously amended. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Applying the *Foman* factors here, the Court declines to grant Plaintiff leave to amend for a third time. The Court finds that "it is clear that granting leave to amend would [be] futile." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004). Thus, Plaintiff's claims are dismissed without leave to amend.

## CONCLUSION

For the reasons above, the Court **GRANTS** the City's (ECF No. 21) and CCT's (ECF No. 20) Motions as to Plaintiff's federal claims and **DENIES AS MOOT** the City's and CCT's Motions as to Plaintiff's state law claims. The Court thus **DISMISSES** Plaintiff's Second Amended Complaint **WITHOUT LEAVE TO AMEND**. As this concludes the litigation in this matter, the Clerk **SHALL** close the file.

**IT IS SO ORDERED.**

Dated:  February 12, 2026

Hon. Janis L. Sammartino
United States District Judge

14

24-CV-1295 JLS (BLM)